IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FRED RANDOLPH, Individually As the surviving father of Noelle Marie Randolph, deceased and as The duly appointed Administrator Of the Estate of Noelle Marie Randolph, deceased,<br><br>     Plaintiff,<br><br>v.<br><br>ARMELLINI EXPRESS LINES, INC. and UTILITY TRAILER MANUFACTURING COMPANY,<br><br>     Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*    CIVIL ACTION FILE NO.: |

## COMPLAINT FOR DAMAGES

NOW COMES the Plaintiff in the above styled action and herewith states his Complaint against the Defendants by showing the court the following:

1.

Plaintiff is a resident of the State of Georgia and is domiciled in Houston County, Georgia. In his capacity as Administrator of the Estate of Noelle Marie Randolph, Plaintiff was duly appointed as the Administrator of said estate by the Probate Court of Houston County as the Estate of Noelle Marie Randolph was also domiciled in Houston County, Georgia.

1

2.

The Defendant ARMELLINI EXPRESS LINES, INC. is a foreign corporation which maintains its principal office at 3446 SW Armellini Avenue, Palm City, Florida 34990. Said corporation is registered to do business in the State of Georgia and does, in fact, conduct business within the State of Georgia. Said corporation is subject to the jurisdiction and venue of this court by service of process upon its registered agent, David Markus, P.C., 2300 Henderson Mill Road, Suite 240, Atlanta, Georgia 30345.

3.

The Defendant Utility Trailer Manufacturing Company is a foreign corporation which maintains its principal office at 17295 Railroad Street, City of Industry, California 91748-1022. Said corporation is registered to do business in the State of Georgia and does, in fact, conduct business within the State of Georgia. Said corporation is subject to the jurisdiction and venue of this court by service of process upon its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

4.

Jurisdiction in this case is proper in this court as there exists a complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.00. Venue is proper in this court as the events that brought

about this action occurred in Butts County, Georgia and the Defendants conduct business within this District and Division.

5.

On or about July 25, 2016, at approximately 9:28 p.m., Noelle Marie Randolph was driving her 2003 Lincoln passenger automobile South on Interstate 75 in Butts County, Georgia. At the same time, a 2014 International Tractor owned and operated by the Defendant ARMELLINI was travelling South on Interstate 75 in Butts County, Georgia at or near the same location, but in a different lane, as Ms. Randolph's vehicle. The 2014 International Tractor was pulling a trailer that was manufactured and sold by the Defendant UTILITY TRAILER MANUFACTURING COMPANY.

6.

As Ms. Randolph was near the 204-mile marker, her vehicle, for reasons unknown, suddenly went to her left striking the guardrail in the median of the interstate and then rebounded to her right until she struck the Defendant ARMELLINI's trailer at a 45-degree angle.

7.

Rather than rebounding off of the Defendant ARMELLINI's trailer and because said trailer did not have an underride guard, the left front part of Ms.

Randolph's vehicle went under the trailer causing the two vehicles to lock together. Thereafter, Ms. Randolph's vehicle was dragged by the Defendant ARMELLINI's tractor and trailer a distance of over 956 feet, during which time, Ms. Randolph's passenger automobile caught on fire. After coming to a stop, the passenger compartment of Ms. Randolph's vehicle became completely engulfed in flames and Ms. Randolph was unable to exit the vehicle.

8.

The sole and proximate cause of the fire in Ms. Randolph's vehicle was the fact that her automobile partially under-rode the subject trailer, becoming locked onto that trailer by the underride nature of the collision, and the combination of sparks from interlocked metal being dragged down the interstate and the fuel from Ms. Randolph's automobile.

9.

As the direct and proximate result of the fire in her vehicle, Ms. Noelle Randolph suffered severe injuries and died. Following the above described event, an autopsy was performed by the Medical Examiner's Office of the Georgia Bureau of Investigation on the deceased body of Noelle Marie Randolph. The autopsy revealed that Ms. Randolph suffered third-degree full-thickness burns over 100% of her body and died from thermal and inhalational injuries. The autopsy

did not reveal any "blunt force trauma" to Ms. Randolph's body that would have contributed to her death. Toxicology tests revealed that Ms. Randolph had not consumed any alcohol or drugs.

10.

The trailer owned and being operated by the Defendant ARMELLINI bore VIN1UYVS25346M757016 was manufactured and sold as new by the Defendant UTILITY TRAILER MANUFACTURING COMPANY.

## COUNT I
## STRICT LIABILITY

11.

At the time said trailer was manufactured by the Defendant UTILITY TRAILER MANUFACTURING COMPANY, said trailer was designed and manufactured without a guard on each side of the trailer known as a "side underride guard". Examples of such guards would be the 1977 William Page design, the 1980 UK design, the 1989 Freightliner/Heyl design, the 1997 Scania design, the 1999 Mack/S. Martin design or the SURG Generation I design; all of which were available as designs of side underride protection systems at the time the Defendant UTILITY TRAILER MANUFACTURING COMPANY designed and manufactured the subject trailer.

12.

The above referenced trailer was designed, manufactured, tested and inspected by the Defendant UTILITY TRAILER MANUFACTURING COMPANY and was defective at the time of its first sale by the Defendant.  In particular, the trailer as designed and manufactured without a side underride protection system, posed an unreasonable risk of causing serious injury or death from underride collisions that would have been thwarted if a side underride guard protection system had been incorporated into the design and manufacturing process of the subject trailer.  The trailer, therefore, was defective and not merchantable or reasonably suited to the use intended when it was sold by the Defendant UTILITY TRAILER MANUFACTURING COMPANY.  The Defendant UTILITY TRAILER MANUFACTURING COMPANY failed to properly warn the consuming public of said risks.

13.

At the time said trailer was designed, manufactured, tested and inspected by the Defendant UTILITY TRAILER MANUFACTURING COMPANY, there existed a safer design of the trailer; namely a side underride protection system similar or equivalent to the designs listed in paragraph eleven (11) above.  Pursuant to O.C.G.A. Section 51-1-11, the Defendant UTILITY TRAILER

MANUFACTURING COMPANY is strictly liable for the defects in the design and manufacturing of the above referenced trailer.

14.

The sole and proximate cause of Noelle Marie Randolph's injuries and death was the absence of a side underride protection system on the subject trailer which was designed and manufactured by the Defendant UTILITY TRAILER MANUFACTURING COMPANY.

## COUNT II
## NEGLIGENCE BY THE DEFENDANT UTILITY TRAILER MANUFACTURING COMPANY

15.

At the time Defendant UTILITY TRAILER MANUFACTURING COMPANY designed, manufactured, engineered, tested and inspected the above referenced trailer, said Defendant had a duty to exercise reasonable care not to subject users of said trailer and the general motoring public to an unreasonable risk of harm and injuries as the result of the use of said trailer.

16.

At the time said trailer was designed, manufactured and sold as new by the Defendant UTILITY TRAILER MANUFACTURING COMPANY, the subject trailer did not have a side underride guard or protection system of any nature.

17.

At the time said trailer was designed, manufactured and sold as new by the Defendant UTILITY TRAILER MANUFACTURING COMPANY, there existed a safer design of such trailer which safer design included a side underride guard or protection system. Examples of such guards would be the 1977 William Page design, the 1980 UK design, the 1989 Freightliner/Heyl design, the 1997 Scania design, the 1999 Mack/S. Martin design or the SURG Generation I design; all of which were available as designs of side underride protection systems at the time the Defendant UTILITY TRAILER MANUFACTURING COMPANY designed and manufactured the subject trailer.

18.

The design and installation of a side underride guard or protection system, such as those identified in paragraphs eleven (11) and seventeen (17) above would have significantly reduced or, in this case, completely eliminated the risk of serious injury or death to the driver and/or passengers of a passenger vehicle if said vehicle were to strike the side of a trailer such as the trailer involved in this case.

19.

Had the subject trailer been designed and manufactured with a side underride guard or protection system, the guard would have been able to significantly reduce or eliminate the dangers posed to members of the general motoring public such as Noelle Marie Randolph without impairing the usefulness of the product or making the product too expensive.

20.

By failing to design and manufacture the subject trailer with a side underride guard or protection system, the Defendant UTILITY TRAILER MANUFACTURING COMPANY breached their duty to exercise reasonable care in the design and manufacture of the subject trailer so as to not subject users of said trailer and the general motoring public to an unreasonable risk of harm and injuries as the result of the use of said trailer.

21.

As the direct and proximate result of the negligence of the Defendant UTILITY TRAILER MANUFACTURING COMPANY, Noelle Marie Randolph was the victim of an underride collision, suffered fatal fire related injuries and died.

## COUNT III
## NEGLIGENCE BY THE DEFENDANT
## ARMELLINI EXPRESS LINES, INC.

22.

The subject trailer was, at all times relevant, owned and operated by the Defendant Armellini Express Lines, Inc.  Said defendant, in fact, owned and operated hundreds of trailers at the time of the subject collision; some trailers having side underride guards or protection systems and some, including the subject trailer, that do not have such guards.

23.

At all times relevant, Defendant Armellini Express Lines, Inc. understood the purpose of the side underride guard and the fact that a trailer equipped with a side underride guard or protection system is a safer trailer than one without such guard.

24.

Defendant Armellini Express Lines, Inc. primarily conducts their business management practices in the State of Florida.  Most of the tractors and trailers owned and operated by the Defendant Armellini Express Lines, Inc., including the tractor and trailer involved in the subject collision, are licensed in the State of Florida and are considered "dangerous instrumentalities" under the law of Florida.

25.

By registering to do business in the State of Georgia and, in fact, conducting business in the State of Georgia, the Defendant Armellini Express Lines, Inc. has subjected itself to the laws and regulations of the State of Georgia.

26.

Under the law of Georgia, the Defendant Armellini Express Lines, Inc. has a legal duty to use reasonable care in selecting equipment to operate on the roads of this state which said equipment posed the least risk of injury to other persons. Specifically, said defendant had a statutory duty to maintain their vehicles and trailers in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

27.

The Defendant Armellini Express Lines, Inc. breached their legal and statutory duties by placing in operation the subject trailer, to be operated on the Interstate highways in State of Georgia, without a side underride guard or protection system.  By doing so, said defendant placed into the flow of traffic at interstate speeds a trailer which, if involved in a side collision with a passenger automobile, significantly increased the risk of causing serious injury or death to the occupants of the passenger automobile.

28.

As the direct and proximate result of Defendant Armellini Express Lines, Inc.'s breach of their legal and statutory duties, Noelle Randolph was seriously injured and died.

## COUNT IV
## WANTON DISREGARD FOR LIFE BY THE DEFENDANT UTILITY TRAILER MANUFACTURING COMPANY

29.

As early as 2004, the Defendant Utility Trailer Manufacturing Company had been named in numerous lawsuits, and was aware of similar lawsuits against other trailer manufacturing companies, regarding the design of their trailers in which they were accused of designing and manufacturing trailers that were defective and dangerous because they did not incorporate into the design and manufacturing process a side underride guard or protection system.  In this regard, the Defendant Utility Trailer Manufacturing Company was fully aware, as early as 2004, that there were "factual and scientific issues such as state-of-the-art technology, the availability of feasible alternative designs, causation and alleged enhancement of injuries."

30.

As early as 2004, the Defendant Utility Trailer Manufacturing Company was fully aware that there had been numerous designs and studies conducted that

proved the effectiveness of side underride guards or protection systems in preventing serious injury or death in the event a passenger vehicle collided with the side of a trailer.  These designs and studies have been listed above in this complaint.

31.

Despite the knowledge of the defectiveness of their design and the availability of other feasible safer designs, the Defendant Utility Trailer Manufacturing Company continued to produce and sell said trailers, without making any changes in the design of their trailers to include side underride guards or protection systems, between 2004 and, at least, 2011.

32.

Instead of acting to eliminate the dangers posed by the trailers they produced, on or about March 11, 2004, the Defendant Utility Trailer Manufacturing Company joined an organization known as the "Trailer Manufacturer's Defense Project" and signed an agreement known as the "Joint Defense Agreement of the Trailer Manufacturer's Defense Project".  The sole purpose of this organization and agreement was to pool financial and legal resources to defeat any efforts to hold said defendant and other trailer manufacturers from responsibility for the defective design of the trailers they designed, produced and placed onto the roads of the United States of America.

33.

The conduct of the Defendant Utility Trailer Manufacturing Company, and the absence of any bona fide dispute as to the propriety of their conduct, evidence that degree of indifference to the consequences of their actions so as to raise the presumption of wanton misconduct and the imposition of punitive damages sufficient so as to punish said defendant.

### COUNT V
### CLAIMS FOR WRONGFUL DEATH

34.

At the time of her death, Noelle Randolph was thirty-three (33) years old and had a life expectancy of 46.80 years according to the Annuity Mortality Table for 1949, Ultimate.

35.

At the time of her death, Noelle Randolph was not married and did not have any children.

36.

As the surviving father of Noelle Randolph, Plaintiff, in his individual capacity, is the proper person to bring this action to recover the full value of the life of Noelle Randolph.

37.

The sole and proximate cause of the death of Noelle Randolph was the negligence of the Defendants named herein. Therefore, Plaintiff is entitled to recover damages sufficient to represent the full value of the life of Noelle Randolph.

## COUNT VI
## CLAIMS FOR DAMAGES RECOVERABLE BY THE ESTATE OF NOELLE RANDOLPH

38.

As Noelle Randolph's vehicle was dragged over 900 feet by the Defendant Armellini Express Lines, Inc.'s trailer, her automobile caught on fire. The fire quickly consumed the passenger compartment of Noelle Randolph's vehicle causing severe burns to her entire body and, ultimately, her death.

39.

Prior to her death, and as the direct and proximate result of the negligence of the named defendants, Noelle Randolph experience excruciating physical and mental pain and suffering from which she ultimately died. Consequently, the Estate of Noelle Randolph is entitled to recover damages for her physical and mental pain and suffering.

40.

As the result of her death, and as the direct and proximate result of the negligence of the named defendants, the Estate of Noelle Randolph incurred medical and funeral expenses.  Consequently, the Estate of Noelle Randolph is entitled to recover those medical and funeral expenses in the amounts shown by the evidence.

41.

As stated above in Count IV, the Defendant Utility Trailer Manufacturing Company acted with such wanton disregard for the safety of others so as to warrant the imposition of punitive damages.  Consequently, the Estate of Noelle Randolph is entitled to recover those punitive damages from said defendant.

WHEREFORE, Plaintiff demand a trial by a jury of twelve and prays for judgment against the Defendants as follows:

**As to Count V:**  Plaintiff, in his individual capacity, prays for judgment against the defendants named herein in the amount of five million dollars ($5,000,000.00) for the full value of the life of Noelle Randolph.

**As to Count VI:**  Plaintiff, in his capacity as Executor of the Estate of Noelle Randolph deceased, prays for judgment against the defendants named herein in the amount of one million dollars ($1,000,000.00) in general damages for the pain and suffering experienced by Noelle Randolph prior to her death as well as special

damages for the medical and funeral expenses as shown by the evidence.  In addition, Plaintiff, in his capacity as Executor of the Estate of Noelle Randolph deceased, prays for judgment against the Defendant Utility Trailer Manufacturing Company for punitive damages in the amount of fifteen million dollars ($15,000,000.00).

**As to all counts:**  Plaintiff, in both capacities, prays for the costs taxed by the Clerk of Court as well as all other relief deemed proper and just by the Court.

                                                   /s/   Craig Alan Webster             .
                                                 CRAIG ALAN WEBSTER
405 Love Avenue                    Attorney for Plaintiff
Tifton, GA 31794                   Ga. State Bar No.: 744950
(229) 388-0082
cwebster@twflaw.com

                                                   /s/   Blake J. Smith                   .
                                                 BLAKE J. SMITH
688 Walnut Street                 Attorney for Plaintiff
Suite 103                            Ga. State Bar No.: 654855
Macon, GA  31201
(478) 746-1468
bsmith@nelsonsmith.com